# IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
## AT JACKSON
November 6, 2001 Session

## ANTHONY RICHARDSON v. STATE OF TENNESSEE

**Direct Appeal from the Criminal Court for Shelby County**
**No. P-21728      Chris Craft, Judge**

---

**No. W2000-01438-CCA-R3-PC  - Filed February 7, 2002**

---

Petitioner, Anthony Richardson, was convicted of first-degree murder in the Shelby County Criminal Court. This Court affirmed the conviction on direct appeal. See State v. Richardson, 995 S.W.2d 119 (Tenn. Crim. App. 1998). Petitioner filed a petition for post conviction relief, which the post-conviction court subsequently denied. Petitioner challenges the denial of his petition, raising the following issues: (1) whether the trial court's comments during a witness' testimony deprived him of his sixth amendment right to a jury trial; (2) whether Petitioner was denied his sixth amendment right to a jury trial when the trial court "forced" counsel to proceed to trial; (3) whether the prosecutor's biblical reference at trial constituted reversible error; and (4) whether there was a conflict of interest when the same judge presided at both his trial and post-conviction hearing. After a thorough review of the record, we affirm the judgment of the trial court.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Criminal Court Affirmed.**

THOMAS T. WOODALL, J., delivered the opinion of the court, in which GARY R. WADE, P.J., and JOE G. RILEY, J., joined.

Gerald Stanley Green, Memphis, Tennessee (on appeal) and John Finklea, Memphis, Tennessee (at trial) for the appellant, Anthony Richardson.

Paul G. Summers, Attorney General and Reporter; John H. Bledsoe, Assistant Attorney General; William L. Gibbons, District Attorney General; and Elaine Sanders, Assistant District Attorney General, for the appellee, State of Tennessee.

**OPINION**

I.      Background

In the direct appeal of Petitioner's conviction, this Court summarized the facts as follows:

On June 1, 1994, Terry Gilliard, the victim, was shot to death at the LeMoyne Gardens Apartments in Memphis, Tennessee. The victim was shot by two separate individuals, Appellant and Earline Jackson. The two shootings were apparently unrelated. Appellant testified that earlier that day, he fought with victim, left the scene, and retrieved a gun that he had hidden nearby. When he returned, he saw something being passed between the victim and his friends. Afraid for his life, Appellant testified that he shot the victim in self-defense. After Appellant fled the scene, witnesses testified that Earline Jackson also shot the victim additional times. The medical examiner testified that shots from each weapon were fatal. Appellant and Earline Jackson were charged with first degree murder.

On August 6, 1999, Petitioner filed a pro se petition for post conviction relief, raising numerous claims including ineffective assistance of counsel and trial court error. Subsequently, the post-conviction court appointed counsel to assist Petitioner. Appointed counsel filed a total of three amended petitions alleging specific instances of ineffective assistance of counsel. Following a hearing, the post-conviction court denied relief to the Petitioner, entering its written findings of fact and conclusions of law on May 9, 2000. Subsequently, Petitioner filed a timely notice of appeal to this Court.

II.     Post-Conviction Hearing

At the post-conviction hearing, the trial court heard testimony from Petitioner and Petitioner's trial counsel, Joseph Ozment. Petitioner testified that he filed the instant petition based upon the ineffective assistance of counsel. Petitioner testified that trial counsel should have objected to the entry of autopsy photographs at trial. Petitioner described the autopsy photographs of the victim's gunshot wounds as "gross." In support of his claim, Petitioner testified that the trial court was reluctant to present the photographs to the jury before lunch. Furthermore, Petitioner claimed that the photographs were not relevant. Petitioner stated that before the photographs were admitted, the medical examiner testified extensively about the location of the victim's gunshot wounds, using the prosecutor as a mannequin. Petitioner also testified that the photographs were not admitted for identification purposes because previously, the medical examiner identified the victim in a separate photograph. Petitioner claimed that the photographs were admitted solely to inflame the jury.

Petitioner further testified that trial counsel failed to object to the trial court's comments on the testimony of a witness called by the defense. Petitioner testified that in order to prove self-defense, it was necessary to show that the victim, or someone close to the victim, was carrying a weapon. Petitioner testified that on direct examination, a witness named Mr. Flynn stated that he was with the victim when Petitioner began shooting and Flynn testified that, "I -- we ran to the left,

and he [Petitioner] was, you know, he was still coming at us.  Then I shot right back through -- it was a little opening in the side of the wall.  I ran back through there."  However, Petitioner testified that on cross-examination Mr. Flynn recanted his statement that "I shot right back through."  In response, the trial court stated, "he [Mr. Flynn] said, 'I shot back through this way.'  I took it to mean he ran that way.'"  Petitioner claimed that the trial court's statement was an improper comment on the evidence.  Petitioner testified that Mr. Flynn's testimony supported his theory of self-defense, and that absent the court's comments, he might have had a stronger argument for self-defense.

Petitioner further testified that trial counsel should have continued the trial to a later date.  Petitioner claimed that a few days before trial, counsel admitted that he was not a "hundred percent" because his wife was in the midst of a difficult pregnancy and his brother was hospitalized.  Petitioner stated that he asked counsel to continue the trial.  Petitioner admitted that counsel made one attempt to continue the trial, but claims that he should have tried again.  Furthermore, Petitioner testified that the court might have been persuaded to continue the trial if counsel had explained his family difficulties as the reason for the continuance.  Petitioner admitted that trial counsel stated "he was going to try to give his all," and that counsel gave his all to a certain extent.  On cross-examination, Petitioner admitted that he did not believe that trial counsel was deficient because he was not ready.

Petitioner further testified that he wanted to negotiate a plea agreement, but counsel failed to present a written offer.  Petitioner claimed that before the trial began, counsel presented him with a potential twenty-year plea agreement.  However, Petitioner claimed that when counsel presented him with the agreement form, it was blank.  Petitioner testified that counsel told him to sign the blank agreement, and then, he would try to negotiate a twenty-year plea bargain.  Petitioner testified that he would have accepted the twenty-year agreement if it was in writing.  In addition, Petitioner further stated that the trial court refused to accept the plea.

Petitioner further testified that the prosecutor's reference to a scripture passage at trial was unduly prejudicial.  Petitioner, through his post-conviction counsel, acknowledged that this issue was addressed by the appellate court.

The State presented testimony from Petitioner's trial counsel, Joseph Ozment.  Counsel testified that any objection to the entry of the autopsy photographs would have been "fruitless."  Counsel testified that the photographs were "extremely mild" with "[n]othing grotesque about them."  Counsel testified that based on his appellate experience, the autopsy photographs, which depicted each fatal wound, were relevant to the State's burden of proof.  Counsel also testified that autopsy photographs are usually admitted even though the medical examiner used demonstrative evidence, such as a mannequin, for an illustration.  Counsel further testified that he chose not to object to the trial court's comments on Mr. Flynn's testimony because the court's interpretation was fair.  Furthermore, counsel testified that he addressed this issue through cross-examination, and probably argued it during closing arguments.

Counsel also testified that on the day of trial, he was prepared to proceed as scheduled.  Counsel acknowledged that the trial court provided adequate time and resources to prepare for trial.

Counsel testified that on the day of trial, the trial was delayed for over an hour for plea negotiations, which, although attempted, proved unsuccessful. Counsel stated that Petitioner refused to accept a negotiated plea agreement. Counsel refuted Petitioner's claims that he requested a continuance, or that he was issued blank paperwork during plea negotiations. Finally, counsel acknowledged that during Petitioner's trial his brother was hospitalized and his wife was experiencing a difficult pregnancy. However, counsel testified that although it might have been "more convenient" if the trial date was postponed, his personal affairs did not affect his representation of Petitioner, his performance at trial, or the trial's outcome.

At the conclusion of the evidentiary hearing, the post-conviction court denied Petitioner relief in a written order. The post-conviction court found that Petitioner failed to prove the allegations in his petition by clear and convincing evidence. The trial court further determined that Petitioner had not established a valid claim of ineffective assistance of counsel.

III.     Analysis

In order to obtain post-conviction relief a petitioner must allege that his conviction or sentence is void or voidable because of an abridgement of a constitutional right. Tenn. Code Ann. § 40-30-203 (1997). If granted an evidentiary hearing, Petitioner has the burden of proving his allegations by clear and convincing evidence. Id. § 40-30-210(f). Findings of fact and conclusions of law made by the post-conviction court are afforded the weight of a jury verdict, and may not be reweighed or re-evaluated by this Court. See Tidwell v. State, 922 S.W.2d 497, 500 (Tenn. 1996); Black v. State, 794 S.W.2d 752, 755 (Tenn. Crim. App. 1990). Consequently, this Court is bound by those findings unless the evidence contained in the record preponderates otherwise. See State v. Burns, 6 S.W.3d 453, 461 (Tenn. 1999).

A defendant alleging ineffective assistance of counsel must prove the allegations of fact underlying his claim by clear and convincing evidence. Tenn. Code Ann. § 40-30-210(f) (1997); Fields v. State, 40 S.W.3d 450, 458 (Tenn. 2001). In order to determine whether counsel provided effective assistance, this Court must decide whether counsel's performance was within the range of competence demanded of attorneys in criminal cases. See Baxter v. Rose, 523 S.W.2d 930, 936 (Tenn. 1975). When reviewing a defense attorney's actions, this Court may not use "20-20" hindsight to second-guess counsel's decisions regarding trial strategy and tactics. See Hellard v. State, 629 S.W.2d 4, 9 (Tenn. 1982).

To succeed on a claim that his trial counsel was ineffective at trial, a petitioner bears the burden of showing that his counsel made errors so serious that he was not functioning as counsel as guaranteed by the Sixth Amendment and that the deficient representation prejudiced the petitioner resulting in a failure to produce a reliable result. See Strickland v. Washington, 466 U.S. 668, 687 (1984); Cooper v. State, 849 S.W.2d 744, 747 (Tenn. 1993). To satisfy the second prong, the petitioner must show that he was prejudiced by his counsel's unprofessional errors, such that there is a reasonable probability that, but for counsel's errors, the result of the proceeding would have differed. See Strickland, 468 U.S. at 694. Petitioner's failure to prove either element, deficient performance or prejudice, requires dismissal of his claim. See id. at 697.

A.      Trial Court's Comments

In his first issue, Petitioner argues that the trial court's comments on a witness' testimony, in the jury's presence, deprived him of his sixth amendment right to a jury trial by "invading the fact finding role and province of the jury." U.S. Const. amend. VI. We disagree.

The comments at issue were made by the trial court during the cross-examination of Mr. Flynn, the victim's cousin. On direct examination, Mr. Flynn testified that he was walking with the victim when Petitioner confronted them with a gun. Flynn testified to the following events:

Mr. Flynn:      . . . and he [Petitioner] shot.

Counsel:       What did you do [in response] ?

Mr. Flynn:     I -- we ran to the left, and he [Petitioner] was, you know, he was still coming at us. Then I shot right back through -- it was a little opening on the side of the wall. I ran back through there."

On cross examination, defense counsel inquired:

Counsel:       Mr. Flynn, did I hear you correctly, did you say that you shot?

Mr. Flynn:     What?

Counsel:       Did I hear that you said you shot back or you shot something of that nature?

Mr. Flynn:     No, you didn't hear me say that.

Counsel:       Oh, so you --

Court:         Let me say this, Mr. Ozment. He said, "I shot back through this way." I took it to mean he ran that way.

Counsel:       Well, Your Honor, it sounded like --

Court:         Well, you can ask him about that.

Mr. Flynn:     Well, I ran through there.

Court:         He did use the word "shot."

Petitioner has waived this issue by altering theories on appeal. A party may not litigate an issue in the trial court on one ground, abandon that ground post-hearing, and assert a new basis or ground for his contention in this Court. See State v. Dooley, 29 S.W.3d 542, 549 (Tenn. Crim. App. 2000). In the petition and at the hearing, Petitioner alleged that trial counsel was ineffective because counsel failed to object to the trial court's comments. However, on appeal, Petitioner argues that

-5-

the trial court's comments deprived him of his constitutional right to a jury trial. U.S. Const. amend. VI.

Even if not waived, we find that the trial court's comments were merely a corrective measure, intended to clarify Mr. Flynn's use of the word "shot." The trial court's comments did not violate Petitioner's sixth amendment right to a jury trial. Neither did trial counsel render ineffective assistance at trial by not objecting to the trial court's comments. Petitioner is not entitled to relief on this issue.

B.    Forced to proceed with trial

Additionally, Petitioner argues that his sixth amendment right to a jury trial was violated when the trial court "forced" counsel to proceed to trial. U.S. Const. amend. VI. On appeal, Petitioner appears to allege that he was deprived of his sixth amendment right to effective assistance of counsel because counsel was "forced" to proceed to trial although counsel was not "one hundred percent." Id.

Petitioner has failed to prove by clear and convincing evidence that counsel was forced to proceed to trial, or that counsel was not "one hundred percent." In its written order denying Petitioner relief, the post-conviction court found that the trial had been continued for one month because of trial counsel's family problems. Furthermore, the post-conviction court noted that on the day of trial, Petitioner's trial counsel made the following declaration to the court:

> I've been down to visit Mr. Richardson several times. Nothing new has developed in any of our conversations . . . The Court appointed an investigator on this. I have had a good investigation. I've had good interviews with witnesses. This case is ready. It couldn't be more ready . . . And I would state that for the record.

In addition, Petitioner's trial counsel testified at the post-conviction hearing that his family problems did not affect his representation of Petitioner or the trial's outcome. Petitioner also testified that trial counsel gave his all "to a certain extent," and was not deficient in his performance because he was not ready. Petitioner has failed to show that he was denied his sixth amendment right to a jury trial or effective assistance of counsel. Petitioner is not entitled to relief on this issue.

C.    Prosecutorial Misconduct

In his next issue, Petitioner claims that he is entitled to post-conviction relief because of prosecutorial misconduct. Specifically, Petitioner claims that his conviction should be reversed because the prosecutor erred by reading and commenting from the Bible when he "knew that his trial tactic . . . was under scrutiny by the appellate courts of this State."

A petitioner in a post-conviction proceeding is not entitled to relief based upon claims that have been waived or previously determined. Tenn. Code Ann. § 40-30-206(f) (1997). A claim for relief is "previously determined" when a court of competent jurisdiction has ruled on the merits after

a full and fair hearing. Id. § 40-30-206(h). "A full and fair hearing has occurred where the petitioner is afforded the opportunity to call witnesses and otherwise present evidence, regardless of whether the petitioner actually introduced any evidence." Id.

We find that this issue was "previously determined" on direct appeal where the court held that the prosecutor's conduct was harmless error. See State v. Richardson, 995 S.W.2d 119, 125-28 (Tenn. Crim. App. 1998). Additionally, we agree with the post-conviction court's finding that "no additional prejudice has been shown at the hearing on this petition which could have affected the verdict." Petitioner is not entitled to relief on this issue.

D.      Conflict of Interest

Finally, Petitioner argues that permitting the same judge to preside at both his trial and post-conviction proceeding presented a conflict of interest because it was "inappropriate for a judge to hear a case alleging serious errors in a trial over which he presided." Petitioner's claim can be rephrased as an allegation of error because the trial judge failed to recuse himself.

Petitioner has waived this issue on appeal by failing to support his argument with authority. Tenn. Ct. Crim. App. R. 10(b). Furthermore, Petitioner failed to present this claim at the hearing or in his post-conviction petition. Likewise, no written motion to recuse appears in the record on appeal. An issue raised for the first time on appeal is waived. See State v. Townes, 56 S.W.3d 30, 35 (Tenn. Crim. App. 2000).

Notwithstanding waiver, Petitioner would not be entitled to relief on this issue. Section 6 of Rule 28 of the Rules of the Supreme Court states, in part, "that the presiding judge shall assign a judge to hear the case who may be the original hearing judge. Should the presiding judge fail to assign a judge, and no judge is designated by the Chief Justice, the judge who presided at the original trial shall hear the petition." Therefore, we find that the judge did nothing improper by presiding at Petitioner's post-conviction hearing.

**CONCLUSION**

We affirm the judgment of the trial court.

_____
THOMAS T. WOODALL, JUDGE